```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/11/2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ELBA DOMINGUEZ, et al.,                    :

                    Plaintiffs,            :

     -against-                             :          14 Civ. 3643 (RA)(HBP)

322 RESTAURANT CORP. d/b/a                 :          REPORT AND
"Sotto Cinque," et al.,                               RECOMMENDATION
                                           :
                    Defendants.            :
----------------------------------X

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE RONNIE ABRAMS, United States District

Judge,


I.   Introduction

          By Order dated May 29, 2015, the Honorable Ronnie

Abrams, United States District Judge, referred this matter to me

to conduct an inquest with respect to corporate defendant 322

Restaurant Corp., d/b/a "Sotto Cinque," and individual defendant

Vincent Mustazza (Order dated May 29, 2015, Docket Item ("D.I.")

51).  Pursuant to Judge Abrams' Order, I issued a scheduling

Order on June 3, 2015 (D.I. 53).  My Scheduling Order provided,

in pertinent part:

          1.  Plaintiffs shall submit proposed findings of
     fact and conclusions of law concerning damages no later

than August 3, 2015.  All factual assertions made by plaintiffs are to be supported by either affidavit or other material of evidentiary weight.

2.   Defendants shall submit their response to plaintiffs' submissions, if any, no later than September 3, 2015.  IF DEFENDANTS (1) FAIL TO RESPOND TO PLAINTIFFS' SUBMISSIONS, OR (2) FAIL TO CONTACT MY CHAMBERS BY SEPTEMBER 3, 2015 AND REQUEST AN IN-COURT HEARING, IT IS MY INTENTION TO ISSUE A REPORT AND RECOMMENDATION CONCERNING DAMAGES ON THE BASIS OF PLAINTIFFS' WRITTEN SUBMISSIONS ALONE WITHOUT AN IN-COURT HEARING.  See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997); Fustok v. ContiCommodity Services Inc., 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t is not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment.")

Plaintiffs timely submitted Proposed Findings of Fact and Conclusions of Law on August 3, 2015 (Plaintiffs' Declaration, dated Aug. 3, 2015 (D.I. 54) ("Pl. Decl.")).

Copies of my Scheduling Order were mailed to defendants' counsel, Justin Levine, Esq., at 859 Concourse Village West, Bronx, New York 10451.  Individual defendant Vincent Mustazza submitted a letter to the court's pro se office on November 24, 2015 requesting an extension of time to submit materials relating to the inquest (Vincent Mustazza's Letter to Judge Abrams, dated Nov. 25, 2015 (D.I. 55) ("Mustazza Letter")).  Vincent Mustazza claimed, among other things, that he was having difficulty getting in touch with Mr. Levine due to health issues (Mustazza Letter).  I issued an Order on November 30, 2015

2

explaining that because Mr. Levine still represented Mr. Mustazza and 322 Restaurant Corp. and because corporations may appear in federal court only through licensed counsel, all communications with the court must be made through Mr. Levine (Order dated Nov. 30, 2015 (D.I. 56)). I further ordered Mr. Levine to contact chambers immediately or I would consider plaintiffs' submissions unopposed because defendants' submissions were already over three months late.[1] To date, defendants have not submitted any materials with respect to this inquest, and Mr. Levine has not contacted my chambers in anyway. Accordingly, on the basis of plaintiffs' submissions alone, I make the following findings of fact and conclusions of law.

---

[1] I issued a second scheduling order on July 31, 2017 because I found Pl. Decl. to be deficient in that it did not include any affidavits or other materials of evidentiary weight (Order dated July 31, 2017 (D.I. 60)). However, this Order was issued in error. As plaintiffs correctly brought to my attention on September 7, 2017, they had previously filed affidavits with the court relating to the issue of damages (see D.I. 43, 44, 45, 46, 47, 48 and 49).

II.   Findings of Fact[2]

   A.   The Parties

      1.   Plaintiff Donaciano Cruz-Caballero is a resident of
New York County and a former employee of Sotto Cinque (Amended
Complaint, dated Jan. 12, 2015 (D.I. 33) ("Am. Compl.") ¶¶ 7, 23;
Affidavit of Donaciano Cruz-Caballero, dated Mar. 2, 2015 (D.I.
43) ("Cruz Aff.") ¶¶ 1, 3).

      2.   Plaintiff Elba Dominguez is a resident of New York
County and a former employee of Sotto Cinque (Am. Compl. ¶¶ 8,
27; Affidavit of Elba Dominguez, dated Dec. 8, 2014 (D.I. 44)
("Dominguez Aff.") ¶¶ 1, 3).

      3.   Plaintiff Joel Martinez is a resident of Bronx
County and a former employee of Sotto Cinque (Am. Compl. ¶¶ 9,
33; Affidavit of Joel Martinez, dated Oct. 30, 2014 (D.I. 45)
("J. Martinez Aff.") ¶¶ 1, 3).

      4.   Plaintiff Pablo Martinez is a resident of Bronx
County and a former employee of Sotto Cinque (Am. Compl. ¶¶ 10,

---

      [2] As a result of defendants' default, all the allegations of
the complaint, except as to the amount of damages, must be taken
as true.   Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849,
854 (2d Cir. 1995); Greyhound Exhibitgroup, Inc. v. E.L.U.L.
Realty Corp., 973 F.2d 155, 158-59 (2d Cir. 1992); Trans World
Airlines, Inc. v. Hughes, 449 F.2d 51, 69-70 (2d Cir. 1971),
rev'd on other grounds sub nom., Hughes Tool Co. v. Trans World
Airlines, Inc., 409 U.S. 363 (1973).

37; Affidavit of Pablo Martinez, dated Oct. 30, 2014 (D.I. 46)

("P. Martinez Aff.") ¶¶ 1, 3).

     5.  Plaintiff Jose Ricardo Martinez-Cayetano is a

resident of New York County a former employee of Sotto Cinque

(Am. Compl. ¶¶ 11, 42; Affidavit of Jose Ricardo Martinez-

Cayetano, dated Nov. 11, 2014 (D.I. 47) ("Cayetano Aff.") ¶¶ 1,

3).

     6.  Plaintiff Elizabeth Tigre is a resident of Bronx

County and a former employee of Sotto Cinque (Am. Compl. ¶¶ 12,

47; Affidavit of Elizabeth Tigre, dated Nov. 19, 2014 (D.I. 48)

("Tigre Aff.") ¶¶ 1, 3).

     7.  Plaintiff Robert Vasquez is a resident of New York

County and a former employee of Sotto Cinque (Am. Compl. ¶¶ 13,

52; Affidavit of Robert Vasquez, dated Dec. 4, 2014 (D.I. 49)

("Vasquez Aff.") ¶¶ 1, 3).

     8.  Defendant 322 Restaurant Corp. is a domestic

corporation organized under the laws of the State of New York

with its principal place of business at 322 East 86th Street, New

York, New York 10028 (Am. Compl. ¶¶ 14, 18).  Defendant 322

Restaurant Corp. owns and operates Sotto Cinque, a restaurant

that, at all relevant times, had an annual gross volume of sales

of $500,000 or more (Am. Compl. ¶¶ 18, 70).

9.   Defendant Vincent Mustazza is the owner, share-holder and manager of defendant 322 Restaurant Corp.'s restau-rant, Sotto Cinque (Am. Compl. ¶ 19).

B.   Plaintiffs' Employment
     with Sotto Cinque

10.   Sotto Cinque employed plaintiff Cruz-Caballero as a grill cook and food delivery worker from approximately October 2008 until approximately July 2013 and again from approximately September 2013 until approximately December 2014 (Am. Compl. ¶¶ 23-24; Cruz Aff. ¶¶ 2-3).

11.   From the commencement of his employment in October 2008 and continuing through June 2011, Cruz-Caballero worked between 63 and 67.5 hours per week (Am. Compl. ¶ 25; Cruz Aff. ¶ 5).   Defendants paid Cruz-Caballero $175 per week during this time period (Am. Compl. ¶ 26; Cruz Aff. ¶ 6).

12.   Beginning in July 2011 and continuing through June 2013, Cruz-Caballero worked between 36 and 38.5 hours per week (Am. Compl. ¶ 25; Cruz Aff. ¶ 5).   Defendants paid Cruz-Caballero $125 per week during this time period (Am. Compl. ¶ 26; Cruz Aff. ¶ 6).

13.   Beginning in September 2013 and continuing through December 2014, Cruz-Caballero worked between 13.5 and 14.5 hours

per week (Am. Compl. ¶ 25; Cruz Aff. ¶ 5).  Defendants paid Cruz-
Caballero $75 per week during this time period, except the last
two weeks of his employment when defendants did not pay him any
wages (Am. Compl. ¶ 26; Cruz Aff. ¶ 6).

14.  Sotto Cinque employed plaintiff Dominguez as a
bartender and manager from 2003 until approximately April 20,
2014 (Am. Compl. ¶¶ 27-28; Dominguez Aff. ¶¶ 2-3).

15.  Beginning in 2006 and continuing through 2009,
Dominguez worked fifteen-hour days, three days per week and nine-
hour days, three days per week (Dominguez Aff. ¶ 7).

16.  Beginning in 2010 and continuing through 2012,
Dominguez worked sixteen-hour days, six days per week (Dominguez
Aff. ¶ 7).

17.  Beginning in January 2013 and continuing through
October 2013, Dominguez worked between eleven and thirteen hours
on Sundays, seven hours on Mondays, seventeen hours on Tuesdays,
seven hours on Wednesdays, between ten and eleven hours on
Thursdays, between fifteen and sixteen hours on Fridays and
between nine and nine and one-half hours on Saturdays (Dominguez
Aff. ¶ 7).

18.  Beginning in November 2013 and continuing through
March 2014, Dominguez worked between fifteen- and sixteen-hour

7

days, four days per week, and between nine- and nine and one-
half-hour days, two days per week (Dominguez Aff. ¶ 7).

19.  In April 2014, Dominguez worked sixteen-hour days,
three days per week, seven-hour days, one day per week and nine-
hour days, two days per week (Dominguez Aff. ¶ 7).

20.  Defendants paid Dominguez $10.00 per hour from
2006 until 2010, $12.00 per hour from 2010 until June 2012 and
$14.00 per hour from July 2012 until April 20, 2014 (Dominguez
Aff. ¶ 5).  However, defendants paid Dominguez these hourly wages
for only 55 hours of work per week (Dominguez Aff. ¶ 5).  Defen-
dants also deducted $3.00 from Dominguez's pay every shift for a
meal whether or not she actually ate a meal (Dominguez Aff. ¶ 9).

21.  Sotto Cinque employed plaintiff Joel Martinez as a
busboy and delivery worker from approximately June 2012 until
approximately September 2013 (Am. Compl. ¶¶ 32-33; J. Martinez
Aff. ¶¶ 2-3).

22.  Beginning in June 2012 and continuing through
January 2013, Joel Martinez worked eight-hour days, six days per
week (J. Martinez Aff. ¶ 7).

23.  Beginning in February 2013 and continuing through
September 2013, Joel Martinez worked seven-hour days, five days
per week, and thirteen-hour days, one day per week (J. Martinez
Aff. ¶ 7).

24.   Defendants paid Joel Martinez a fixed salary of $420 per week for the entirety of his employment (Am. Compl. ¶ 35; J. Martinez Aff. ¶ 7).

25.   Sotto Cinque employed plaintiff Pablo Martinez as a prep cook, delivery worker and kitchen worker from approximately September 2009 until approximately September 2013 (Am. Compl. ¶¶ 36-37; P. Martinez Aff. ¶¶ 2-3).

26.   Beginning in September 2009 and continuing through June 2011, Pablo Martinez worked between thirteen and one-half- and fourteen-hour days, six days per week (P. Martinez Aff. ¶ 7). Defendants paid Pablo Martinez a fixed salary of $350 per week during this time period (Am. Compl. ¶ 39; P. Martinez Aff. ¶ 5).

27.   Beginning in July 2011 and continuing through September 2013, Pablo Martinez worked eleven-hour days, five days per week, and thirteen-hour days, one day per week (P. Martinez Aff. ¶ 7). Defendants paid Pablo Martinez $180 per week from July 2011 until June 2012 and paid him $550 per week from July 2012 until September 2013 (Am. Compl. ¶ 39; P. Martinez Aff. ¶ 5).

28.   Sotto Cinque employed plaintiff Martinez-Cayetano as a prep cook and delivery worker from approximately November 2009 until May 4, 2014 (Am. Compl. ¶¶ 41-42; Cayetano Aff. ¶¶ 2-3).

29.   Beginning in November 2009 and continuing through
August 2013, Martinez-Cayetano worked between thirteen and one-
half- and fourteen and one-half-hour days, five days per week,
and nine-hour days, one day per week (Cayetano Aff. ¶ 7).
Defendants paid Martinez-Cayetano $210 per week during this time
period (Am. Compl. ¶ 44; Cayetano Aff. ¶ 7)

30.   Beginning in September 2013 and continuing through
May 4, 2014, Martinez-Cayetano worked nine-hour days, five days
per week (Cayetano Aff. ¶ 7).   Defendants paid Martinez-Cayetano
$25.00 per day during this time period (Am. Compl. ¶ 44; Cayetano
Aff. ¶ 7).

31.   Sotto Cinque employed plaintiff Tigre as a host-
ess, waitress and bartender from approximately August 2012 until
approximately April 11, 2014 (Am. Compl. ¶¶ 46-47; Tigre Aff. ¶¶
2-3).

32.   Beginning in August 2012 and continuing through
January 2013, Tigre worked six-hour days, three days per week as
a hostess (Tigre Aff. ¶ 7).   Defendants paid Tigre $10.00 per
hour during this time period (Tigre Aff. ¶ 5).

33.   Beginning in February 2013 and continuing through
December 2013, Tigre worked between ten and one-half- and eleven
and one-half-hour days, four days per week as a hostess and
between ten- and twelve-hour days, two days per week as a wait-

10

ress (Tigre Aff. ¶ 7).  Defendants paid Tigre $10.00 per hour for the hours she worked as a hostess and $25.00 for each shift she worked as a waitress (Am. Compl. ¶ 49; Tigre Aff. ¶ 7).

34.  Beginning in January 2014 and continuing until approximately April 11, 2014, Tigre worked between six and one-half- and seven-hour days, three days per week, and between eight- and nine and one-half-hour days two days per week as a bartender (Tigre Aff. ¶ 7).  Defendants paid Tigre $25.00 per shift during this time period (Am. Compl. ¶ 49; Tigre Aff. ¶ 7). Defendants also deducted $3.00 from Tigre's pay every shift for a meal whether or not she actually ate a meal (Tigre Aff. ¶ 12).

35.  Sotto Cinque employed plaintiff Vasquez as an assistant manager, host, waiter and bartender from February 12, 2013 until April 14, 2014 (Am. Compl. ¶¶ 52-53; Vasquez Aff. ¶¶ 2-3).

36.  From February 12, 2013 until February 28, 2013, Vasquez worked eight-hour days, five days per week  (Vasquez Aff. ¶ 5).  Defendants paid Vasquez $25.00 per shift during this time period.

37.  In March 2013, Vasquez worked approximately 53 hours per week as a host at Sotto Cinque (Vasquez Aff. ¶ 6). Vasquez worked more than ten hours per day for three days each week (Vasquez Aff. ¶ 6).  Defendants paid Vasquez $10.00 per hour

11

during this time period, but only paid him for 48 hours of work per week (Vasquez Aff. ¶ 6).

38.   In April 2013, Vasquez worked between nine- and ten-hour days, four days per week as a waiter and an additional 16 hours per week as a host (Vasquez Aff. ¶ 7).  Defendants paid Vasquez $25.00 per shift for the days he worked as a waiter and $10.00 per hour for the hours he worked as a host (Vasquez Aff. ¶ 7).

39.   Beginning in May 2013 and continuing through November 15, 2013, Vasquez worked approximately 53 hours per week as a host and assistant manager (Vasquez Aff. ¶ 8).  Vasquez worked more than ten hours per day for three days each week (Vasquez Aff. ¶ 8).  Defendants paid Vasquez $10.00 per hour during this time period, but only paid him for 48 hours of work per week (Vasquez Aff. ¶ 8).

40.   From November 16, 2013 until March 31, 2014, Vasquez worked approximately 53 hours per week as a host and assistant manager (Vasquez Aff. ¶ 9).  Vasquez worked more than ten hours per day for three days each week (Vasquez Aff. ¶ 9). Defendants paid Vasquez $12.00 per hour during this time period, but only paid him for 48 hours of work per week (Vasquez Aff. ¶ 9).

41.   From April 1, 2014 until April 14, 2014, Vasquez worked approximately 53 hours per week as a host and assistant manager (Vasquez Aff. ¶ 10).   Vasquez worked more than ten hours per day for three days each week (Vasquez Aff. ¶ 10).   Defendants paid Vasquez $380.00 per week during this time period (Vasquez Aff. ¶ 10).

42.   None of the above named plaintiffs were ever paid overtime premium pay, i.e., time and a half, as required by state and federal law, for the hours that each worked in excess of 40 hours per week (Am. Compl. ¶ 58).

C.   Procedural History

43.   Plaintiffs commenced this action against the defendants on May 21, 2014 alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., ("FLSA") and the New York Labor Law, §§ 650 et seq. ("NYLL") (Complaint, dated May 21, 2014 (D.I. 2) ("Compl.")).

44.   The Clerk of the Court issued certificates of default against defendants on September 11, 2014 for failing to answer plaintiffs' complaint (Clerk's Certificates of Default, dated Sept. 11, 2014 (D.I. 18 and 19)).   Judge Abrams thereafter ordered plaintiffs to move for a default judgment by October 24, 2014 (Order dated Oct. 3, 2014 (D.I. 22)).   When plaintiffs

13

failed to submit the appropriate motion, Judge Abrams issued a
second Order instructing plaintiffs to submit a motion for
default judgment by November 21, 2014 or she would dismiss the
action for failure to prosecute (Order dated Nov. 4, 2014 (D.I.
23)).  Plaintiffs then moved for an extension of time on two
separate occasions and Judge Abrams set a new deadline of Decem-
ber 15, 2014 for plaintiffs' motion (Order dated Dec. 8, 2014
(D.I. 28)).

      45.  In the interim, defendants submitted a motion to
vacate the default on December 11, 2014 (Notice of Motion to
Vacate, dated Dec. 11, 2014 (D.I. 29)) and an answer to the
complaint on December 22, 2014 (Defendants' Answer, dated Dec.
22, 2014 (D.I. 32)).  Judge Abrams granted defendants' motion to
vacate the default and on January 12, 2015, plaintiffs filed an
amended complaint and added Cruz-Caballero as a plaintiff (Am.
Compl.).  Defendants did not submit an answer to plaintiffs'
amended complaint and the Clerk again issued certificates of
default against defendants on February 27, 2015 (Clerk's Certifi-
cate of Default, dated Feb. 27, 2015 (D.I. 36 and 37)).

      46.  On May 18, 2015, Judge Abrams conducted a hearing
to determine whether a default judgment should be entered against
defendants.  At the hearing, Mr. Levine explained that he had
been unable to contact defendants.  Judge Abrams allowed Mr.

Levine one additional week to try to reach defendants; if he was
unable to do so, she would enter a default judgment against them.
On May 29, 2015, Judge Abrams granted plaintiffs' motion for
default judgment against defendants (Order dated May 29, 2015
(D.I. 52)).

III.  Conclusions of Law

       47.  The Court has subject matter jurisdiction over
this action pursuant to 28 U.S.C. § 1331 because plaintiffs
allege a violation of a federal statute -- the FLSA.  The Court
also has supplemental jurisdiction pursuant to 28 U.S.C. §
1367(a) with respect to plaintiffs' NYLL claims because they are
part of the "same case or controversy" as their FLSA claims and
arise out of the same facts.  28 U.S.C. § 1367(a).

       48.  Venue is proper in this district pursuant to 28
U.S.C. § 1391(b)(2) because the events giving rise to plaintiffs'
claims occurred in this district.

       49.  Under the FLSA, an employee plaintiff generally
"has the burden of proving that he performed work for which he
was not properly compensated." Anderson v. Mt. Clemens Pottery
Co., 328 U.S. 680, 687 (1946), superseded on other grounds by 29
U.S.C. §§ 251, et seq.; accord Santillan v. Henao, 822 F. Supp.
2d 284, 293-94 (E.D.N.Y. 2011).  However, "employees seldom keep

. . . records [of hours worked] themselves." <u>Anderson v. Mt.</u>
<u>Clemens Pottery Co.</u>, <u>supra</u>, 328 U.S. at 687.  Accordingly, the
FLSA requires that an employer "make, keep, and preserve . . .
records of the persons employed by him and of the wages, hours,
and other conditions and practices of employment."  29 U.S.C. §
211(c).  In default situations such as this one, if the defendant
employer does not maintain proper time or payroll records, he
essentially deprives "plaintiff of the necessary employee records
required by the FLSA, thus hampering plaintiff's ability to prove
his damages." <u>Santillan v. Henao</u>, <u>supra</u>, 822 F. Supp. 2d at 294.
Accordingly, the Supreme Court has held that "an employee has
carried out his burden if he proves that he has in fact performed
work for which he was improperly compensated and if he produces
sufficient evidence to show the amount and extent of that work as
a matter of just and reasonable inference." <u>Anderson v. Mt.</u>
<u>Clemens Pottery Co.</u>, <u>supra</u>, 328 U.S. at 687; <u>accord Tho Dinh Tran</u>
<u>v. Alphonse Hotel Corp.</u>, 281 F.3d 23, 31 (2d Cir. 2002), <u>abro-</u>
<u>gated</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Slayton v. American Exp. Co.</u>, 460 F.3d
215 (2d Cir. 2006).

50.  In light of the holding in <u>Mt. Clemens Pottery</u>
<u>Co.</u>, courts in this Circuit have routinely found that where a
defendant employer defaults, a plaintiff may sustain his burden
of proof "'by relying on his recollection alone.'" <u>Martinez v.</u>

16

Alimentos Saludables Corp., 16-cv-1997 (DLI)(CLP), 2017 WL
5033650 at *12 (E.D.N.Y. Sept. 22, 2017), quoting Doo Nam Yang v.
ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005) (Sand,
D.J.); see also Park v. Seoul Broad. Sys. Co., 05 Civ. 8956
(BSJ)(DFE), 2008 WL 619034 at *7 (S.D.N.Y. Mar. 6, 2008) (Jones,
D.J.) (holding that courts should apply a "special burden-shift-
ing standard" where employers fail to comply with this statutory
duty of record keeping).[3]

     51.  All plaintiffs have submitted affidavits attesting
to the number of hours they worked at Sotto Cinque with specific-
ity and the wages they were paid (see Compl., Am. Compl., Cruz
Aff., Dominguez Aff., J. Martinez Aff., P. Martinez Aff.,
Cayetano Aff., Tigre Aff., Vasquez Aff.).  Given defendants'
default in this action, defendants' lack of compliance with
federal statutes governing record keeping practices and the
deferential legal standards set forth above, plaintiffs have
sustained their burden of proof.

_____

     [3] Plaintiff's burden of proof to establish proper damages is
nearly identical under the NYLL.  See N.Y. Lab. Law § 195(4)
(requiring employers to maintain "payroll records showing the
hours worked, gross wages, deductions and net wages for each
employee"); Marin v. JMP Restoration Corp., 09-cv-1384
(CBA)(VVP), 2012 WL 4369748 at *6 (E.D.N.Y. Aug. 24, 2012)
(Report & Recommendation), adopted at, 2012 WL 4364671 (E.D.N.Y.
Sept. 24, 2012) (to determine damages under the NYLL, courts
should use "the same burden-shifting scheme employed in FLSA
actions").

                              17

A.   Donaciano
     Cruz-Caballero[4]

52.   Cruz-Caballero seeks damages under a minimum wage
claim.   An employer who fails to meet minimum wage obligations
under the FLSA and the NYLL "shall be liable to the employee or
employees affected in the amount of their unpaid minimum wages .
. . and in an additional equal amount as liquidated damages."   29
U.S.C. § 216(b); see also 12 N.Y.C.R.R. § 143-1.3.   Because Cruz-
Caballero's FLSA claims are subject to a three-year statute of
limitations and his NYLL are subject to a six-year statute of
limitations, Cruz-Caballero can recover damages based on the FLSA
minimum wage for the three-year period preceding the commencement
of this action and damages based on the NYLL minimum wage for the
period from three to six years prior to the commencement of this
action.   See 29 U.S.C. § 255(a); N.Y. Lab. Law § 198(3).   Thus,

---

[4] Plaintiffs submitted a damages chart purporting to show
each plaintiff's actual damages (Plaintiffs Damages Chart,
annexed to Pl. Decl. (D.I. 54) ("Damages Chart")).   Based on my
review of this chart, plaintiffs have made several errors,
including applying the wrong statutory minimum wage at various
times, using numbers of hours worked that are inconsistent with
plaintiffs' affidavits, averaging hour approximations incorrectly
and various mathematical errors.   Thus, the damages that I
recommend be awarded to each plaintiff vary from plaintiffs'
calculations.   For the sake of judicial efficiency, I shall not
identify each of plaintiffs' errors in the analysis; rather, I
shall calculate plaintiffs' damages solely on the basis of
plaintiffs' affidavits and the amended complaint.

damages for the period prior to May 21, 2011 must be based on the NYLL minimum wage of $7.15.  N.Y. Lab. Law § 652(1).  For the period after May 21, 2011, Cruz-Caballero's damages must be based on the FLSA minimum wage of $7.25.  29 U.S.C. § 206(a)(1).

53.  Cruz-Caballero alleges that he worked an average of 65.25 hours per week[5] from October 2008 until June 2011 and was paid $175 per week -- an effective hourly rate of $2.68 (Am. Compl. ¶¶ 25-26; Cruz Aff. ¶¶ 5-6).  Thus, applying the applicable minimum wage, multiplying by 40 hours for each week Cruz-Caballero worked and subtracting the $2.68 per hour Cruz-Caballero was actually paid, Cruz-Caballero is owed a total of $25,409.60 in unpaid minimum wage damages from October 2008 until June 2011, calculated as follows:

---

[5] It is appropriate to use an average number of hours for the purposes of assessing damages.  See Miguel v. Mi Bella Puebla Corp., 16-cv-01593 (SJ)(RER), 2017 WL 4838820 at *4 (E.D.N.Y. Sept. 6, 2017) (Report & Recommendation), adopted at, 2017 WL 4838761 (E.D.N.Y. Oct. 24, 2017) (in default situations, plaintiff may provide an evidentiary basis to establish damages even if the information provided is general and is based on estimation or recollection).

Pay period 10/01/2008 to 05/21/2011:
137 weeks of work x 40 hours per week x $7.15 =    $39,182.00

Pay period 05/22/2011 to 06/30/2011:
5 weeks of work x 40 hours per week x $7.25    =    $1,450.00

       Total minimum wages:            $40,632.00

       Hourly rate paid, i.e.,
       $2.68 per hour x 40 hours
       per week for 142 weeks:        ($15,222.40)

       Net minimum wages owed:       **$25,409.60**

     54.   Cruz-Caballero alleges that he worked an average of 37.25 hours per week from July 2011 until June 2013 and was paid $125 per week -- an effective hourly rate of $3.35 (Am. Compl. ¶¶ 25-26; Cruz Aff. ¶¶ 5-6).  Thus, applying the applicable minimum wage, multiplying by the 37.25 hours for each week Cruz-Caballero worked and subtracting the $3.35 per hour Cruz-Caballero was actually paid, Cruz-Caballero is owed a total of $15,108.60 in unpaid minimum wage damages from July 2011 until June 2013, calculated as follows:

Pay period 07/01/2011 to 06/30/2013:
104 weeks of work x 37.25 hours per week x $7.25 = $28,086.50

       Hourly rate paid, i.e.,
       $3.35 per hour x 37.25 hours
       per week for 104 weeks:       ($12,977.90)

       Net minimum wages owed:       **$15,108.60**

     55.   Cruz-Caballero alleges that he worked an average of 14 hours per week from September 2013 until December 21, 2014

and was paid $75 per week -- an effective hourly rate of $5.36

(Am. Compl. ¶¶ 25-26; Cruz Aff. ¶¶ 5-6).  Defendants did not pay

Cruz-Caballero any wages during his last two weeks of employment

(Am. Compl. ¶¶ 25-26; Cruz Aff. ¶¶ 5-6).  The FLSA statutory

minimum wage was $7.25 in 2013.  29 U.S.C. § 206(a)(1).  Under

the NYLL, the statutory minimum wage increased to $8.00 as of

December 31, 2013.  N.Y. Lab. Law § 652(1).  Thus, applying the

applicable minimum wage, multiplying by an average of 14 hours

for each week Cruz-Caballero worked and subtracting the $5.36 per

hour Cruz-Caballero was actually paid, Cruz-Caballero is owed a

total of $2,004.38 in unpaid minimum wage damages from September

2013 until December 21, 2014, calculated as follows:

Pay period 09/01/2013 to 12/30/2013:
17 weeks of work x 14 hours per week x $7.25 =     $1,725.50

Pay period 12/31/2013 to 02/28/2014:
9 weeks of work x 14 hours per week x $8.00   =     $1,008.00

Pay period 04/01/2014 to 06/30/2014:
13 weeks of work x 14 hours per week x $8.00 =     $1,456.00

Pay period 09/01/2014 to 12/21/2014:
16 weeks of work x 14 hours per week x $8.00 =     $1,792.00

       Total minimum wages:                     $5,981.50

       Hourly rate paid, i.e.,
       $5.36 per hour x 14 hours
       per week for 53 weeks:                   ($3,977.12)

       Net minimum wages owed:                  **$2,004.38**

56.   Thus, Cruz-Caballero is owed a total of **$42,522.58** in unpaid minimum wage damages.

57.   Cruz-Caballero also alleges violations of the FLSA and the NYLL arising out of defendants' failure to pay him overtime premium pay for all hours worked in excess of 40 hours per week.  Both the FLSA and the NYLL require employers to pay overtime wages, equal to one and one-half the employee's regular salary, for every hour worked in excess of 40 hours in any given week.  29 U.S.C. § 207(a); N.Y. Lab. Law § 651; 12 N.Y.C.R.R. § 142-2.2.  The method for calculating overtime under both statutes is the same, and a plaintiff is not entitled to receive double damages.  <u>Martinez v. Alimentos Saludables Corp.</u>, <u>supra</u>, 2017 WL 5033650 at *15.  A plaintiff must plead sufficiently detailed information to "support a reasonable inference that [he] worked more than 40 hours a week."  <u>Kleitman v. MSCK Mayain Olam Habba Inc.</u>, 11-cv-2817 (SJ), 2013 WL 4495671 at *4 (E.D.N.Y. Aug. 20, 2013).

58.   Cruz-Caballero alleges he worked an average of 25.25 overtime hours per week from October 2008 until June 2011 (Am. Compl. ¶ 25; Cruz Aff. ¶ 5).  Multiplying the NYLL statutory minimum wage of $7.15 by 1.5, Cruz-Caballero was entitled to a premium pay of $10.725 for each hour worked in excess of 40 hours per week from October 2008 until May 21, 2011.  Multiplying the

22

federal statutory minimum wage of $7.25 by 1.5, Cruz-Caballero was entitled to a premium pay of $10.875 from May 22, 2011 until June 2011.  Multiplying these premium pay rates by an average of 25.25 overtime hours and subtracting Cruz-Caballero's actual pay, yields a total of $28,864.29 in unpaid overtime damages for October 2008 until June 2011, calculated as follows:

Pay period 10/01/2008 to 05/21/2011:
137 weeks of work x 25.25 O/T hours x $10.725 =    $37,100.46

Pay period 05/22/2011 to 06/30/2011:
5 weeks of work x 25.25 O/T hours x $10.875   =    $1,372.97

      Total overtime wages:                $38,473.43

      Hourly rate paid, i.e.,
      $2.68 per hour x 25.25 O/T
      hours per week for 142 weeks:        ($9,609.14)

      Net overtime wages owed:             **$28,864.29**

59.  Cruz-Caballero next alleges that he is entitled to "spread-of-hours" damages.  Under NYLL's "spread-of-hours" rule, an employee is entitled to an additional hour of pay, at the prevailing minimum wage, if the start and end times of his workday are more than ten hours apart.  12 N.Y.C.R.R. §§ 142-2.4, 142-2.18.  Although Cruz-Caballero does not provide a break down of what his hours were each day, he claims in his affidavit to have worked "a spread of hours greater than ten per day" for four days per week from October 2008 until June 2011, for two days per week from June 2011 until July 2013 and for one day per week from

23

September 2013 until December 21, 2014 (Cruz Aff. ¶ 5).  Because
spread-of-hours is only available under the NYLL, the New York
statutory minimum wage of $7.15 must be used for the applicable
hours worked prior to December 30, 2013 and $8.00 must be used
for the applicable hours worked from December 31, 2013 until
December 21, 2014.  See Fermin v. Las Delicias Peruanas Restau-
rant, Inc., 93 F. Supp. 3d 19, 45 (E.D.N.Y. 2015) ("there is no
counterpart under the FLSA" for spread-of-hours damages).  Thus,
Cruz-Caballero is entitled to $5,973.95 in spread-of-hours
damages, calculated as follows:

Pay period 10/01/2008 to 06/30/2011:
142 weeks of work x 4 days per week x $7.15 =        $4,061.12

Pay period 07/01/2011 to 06/30/2013:
104 weeks of work x 2 days per week x $7.15 =        $1,487.20

Pay period 09/01/2013 to 12/30/2013:
17 weeks of work x 1 day per week x $7.15   =          $121.55

Pay period 12/31/2013 to 12/21/2014:
38 weeks of work x 1 day per week x $8.00   =          $304.00

    Total spread-of-hours damages:                  **$5,973.95**

    60.  In addition to compensatory damages, Cruz-Cabal-
lero also seeks to recover liquidated damages.  Because the FLSA
has a three-year statute of limitations, Cruz-Caballero is able
to recover liquidated damages only under the NYLL for unpaid
wages owed from October 2008 until May 21, 2011.  Prior to April
9, 2011, the NYLL provided that an employee could collect 25% of

his total unpaid wages as liquidated damages.  See N.Y. Lab. Law
§ 198(1-a) (amended Nov. 23, 2009 and Apr. 9, 2011).[6]  The NYLL
was amended effective April 9, 2011 to provide that an employee
could collect 100% of his total unpaid wages, plus spread-of-
hours damages, as liquidated damages.  N.Y. Lab. Law § 198(1-a);
Rana v. Islam, 887 F.3d 118, 123 n.3 (2d Cir. 2018) (liquidated
damages available under the NYLL for spread-of-hours damages, but
not under the FLSA).  Based on the calculations above, Cruz-
Caballero is entitled to $23,422.80 in unpaid minimum wages and
$26,610.85 in unpaid overtime pay from October 2008 until April
8, 2011.  Thus, Cruz-Caballero is entitled to **$12,508.41** in
liquidated damages for this time period (25% of $50,033.65).
Cruz-Caballero is also entitled to $1,072.80 in unpaid minimum
wages, $1,218.82 in unpaid overtime pay and $171.60 in spread-of-
hours damages from April 9, 2011 until May 21, 2011.  Accord-

---

[6] The 2009 amendment to the statute did not affect the
percentage that an employee was able to recover as liquidated
damages.  Under this pre-2009 statutory scheme, an employee could
only recover 25% of his unpaid wages as liquidated damages if he
was able to establish the employer's violations were willful.
See N.Y. Lab. Law § 198(1-a) (amended Nov. 23, 2009); Morales v.
Mw Bronx, Inc., 15 Civ. 6296 (TPG), 2016 WL 4084159 at *9
(S.D.N.Y. Aug. 1, 2016) (Griesa, D.J.).  The 2009 amendment
removed this "willfulness" requirement and shifted the burden to
the employer to put forth a "good faith defense."  N.Y. Lab. Law
§ 198(1-a) (amended Apr. 8, 2011).  Because defendants have
defaulted, plaintiffs are entitled to liquidated damages under
both versions of the statute.

ingly, Cruz-Caballero is entitled to **$2,463.22** in liquidated damages for this time period (100% of $2,463.22).

61.   Turning to Cruz-Caballero's claim for liquidated damages from May 22, 2011 until December 21, 2014, Cruz-Caballero can collect 100% of his unpaid wages as liquidated damages under either the FLSA or the NYLL.   29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).   However, Cruz-Caballero may not receive double liquidated damages under both statutes.   Rana v. Islam, supra, 887 F.3d at 123; Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60-61 (2d Cir. 2016).   Because only the NYLL allows for the recovery of spread-of-hours damages, I shall conduct this analysis under the NYLL.   Based on the above calculations, Cruz-Caballero is entitled to $18,026.98 in unpaid minimum wages, $1,034.62 in unpaid overtime pay and $2,055.75 in spread-of-hours damages.   Thus, Cruz-Caballero is entitled to **$21,117.35** in liquidated damages for this time period.

62.   Finally, Cruz-Caballero alleges that defendants did not provide him with any wage notices or statements during his employment (Cruz Aff. ¶ 11).   Effective April 9, 2011, the NYLL requires employers to provide employees with a wage notice containing basic information such as rate of pay at the time of hire.   N.Y. Lab. Law § 195(a).   An employee who is not provided with this wage notice at the time of hiring or by February 1st of

26

each subsequent year of employment can recover damages of $50 for each workday the violation continues with a statutory maximum of $2,500 in damages.  N.Y. Lab. Law §§ 195(a) (amended Dec. 28, 2014),[7] 198(1-b) (amended Jan. 19, 2016)[8]; Xochimitil v. Pita Grill of Hell's Kitchen, Inc., 14 Civ. 10234 (JGK)(JLC), 2016 WL 4704917 at *14 (S.D.N.Y. Sept. 8, 2016) (Cott, M.J.) (Report & Recommendation), adopted at, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016) (Koeltl, D.J.).  As of April 9, 2011, employers are also required to provide employees with a wage statement on each payday.  N.Y. Lab. Law § 195(3).  An employee can recover $100 for each work week that a wage statement violation occurs, again, with a statutory maximum of $2,500.  N.Y. Lab. Law § 198(1-d) (amended Jan. 19, 2016).

   63.  While neither statute applies retroactively, the mere fact that an employee was hired prior to April 9, 2011 does not relieve employers from complying with wage notice and statement requirements so long as the employee remained employed by defendants.  Xochimitil v. Pita Grill of Hell's Kitchen, Inc., supra, 2016 WL 4704917 at *14 (employee hired in 2008 was enti-

---

[7] The December 28, 2014 amendment to the statute no longer requires this annual wage notice.

[8] The January 19, 2016 amendment to the statute now permits for employees to recover a statutory maximum of $5,000 for a wage statement violation and a maximum of $5,000 for a wage notice violation.

tled to receive wage notices starting in February 2012 and wage statements after April 9, 2011); see also Andrade v. 168 First Ave Restaurant Ltd., 14 Civ. 8268 (JPO)(AJP), 2016 WL 3141567 at *8-*9 (June 3, 2016) (Peck, M.J.) (Report & Recommendation), adopted at, 2016 WL 3948101 (S.D.N.Y. July 19, 2016) (Oetken, D.J.); Inclan v. N.Y. Hospitality Grp., Inc., 95 F. Supp. 3d 490, 501 (S.D.N.Y. 2015) (Buchwald, D.J.); Baltierra v. Advantage Pest Control Co., 14 Civ. 5917 (AJP), 2015 WL 5474093 at *10-*11 (S.D.N.Y. Sept. 18, 2015) (Peck, M.J.).  Defendants were obligated to provide Cruz-Caballero with wage notices starting in February 2012 and wage statements after April 9, 2011.  Thus, Cruz-Caballero is entitled to a total of $5,000 in statutory damages for defendants' wage statement and wage notice violations.

64.  Therefore, I respectfully recommend that Cruz-Caballero be awarded a total of $118,449.80, calculated as follows:

| | |
|---|---|
| Unpaid minimum wages: | $42,522.58 |
| Unpaid overtime premium pay: | $28,864.29 |
| Spread-of-hours damages: | $5,973.95 |
| Liquidated damages: | $36,088.98 |
| Wage statement and notice violation: | $5,000.00 |
| Total damages: | **$118,449.80** |

B.  Elba Dominguez

65.  Dominguez seeks damages under a minimum wage claim.  Beginning in 2010 and continuing through June 2012, Dominguez worked 96 hours per week (Dominguez Aff. ¶ 7). Dominguez alleges she was paid at the rate of $12.00 per hour, but was only paid up to 55 hours of work per week (Dominguez Aff. ¶ 5).  In addition, defendants also deducted $3.00 per shift from her wages, or $36 per week, as meal credits (Dominguez Aff. ¶¶ 5, 9).  While the NYLL permits employers to deduct the cost of certain meals from an employee's wages, an employer cannot claim this meal credit unless the meal provided contains an item from each of the following groups: (1) fruits or vegetables; (2) grains or potatoes; (3) eggs, meat, fish, poultry, dairy or legumes and (4) tea, coffee, milk or juice.  See 12 N.Y.C.R.R. §§ 146-1.9, 3.7; see also Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 501 (S.D.N.Y. 2017) (Failla, D.J.).  "If an employer cannot prove that the meals it provided its employees satisfied these nutritional requirements, it cannot claim a meal credit." Gamero v. Koodo Sushi Corp., supra, 272 F. Supp. 3d at 501; see also Romero v. Anjdev Enterps., Inc., 14 Civ. 457 (AT), 2017 WL 548216 at *10 (S.D.N.Y. Feb. 10, 2017) (Torres, D.J.); Hernandez v. Jrpac Inc., 14 Civ. 4176 (PAE), 2016 WL 3248493 at *27

(S.D.N.Y. June 9, 2016) (Engelmayer, D.J.).  According to Dominguez's affidavit, she was only ever permitted to eat chicken, pasta, soup or salad (Dominguez Aff. ¶ 9).  Thus, defendants are not entitled to this meal credit.[9]  Dominguez was paid $624 per week ($12.00 x 55 hours, minus $36 in improper meal deductions), which gives her an effective hourly rate of $6.50 during this time period.

66.  Because Dominguez's FLSA claims are subject to a three-year statute of limitations and her NYLL claims are subject to a six-year statute of limitations, Dominguez can recover damages based on the FLSA minimum wage for the three-year period preceding the commencement of this action and damages based on the NYLL minimum wage for the period from three to six years prior to the commencement of this action.  Thus, damages for the period prior to May 21, 2011 must be based on the NYLL minimum wage of $7.15.  N.Y. Lab. Law § 652(1).  For the period after May 21, 2011, Dominguez's damages must be based on the FLSA minimum wage of $7.25.  29 U.S.C. § 206(a)(1).  Thus, applying the

---

[9] Similarly, under the FLSA, "an employer may claim a meal credit if it is properly documented" and "the amount of credit is limited to the actual cost to the employer." Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 256 (S.D.N.Y. 2008) (Dolinger, M.J.).  Because defendants are currently in default, and have not documented the cost of any meals, they are not entitled to this meal credit under the FLSA.

applicable minimum wage, multiplying by 40 hours for each week
Dominguez worked and subtracting the $6.50 per hour Dominguez was
actually paid, Dominuguez is owed a total of $3,582.00 in unpaid
minimum wage damages from January 1, 2010 until June 30, 2012,
calculated as follows:

Pay period 01/01/2010 to 05/21/2011:
72 weeks of work x 40 hours per week x $7.15 =      $20,592.00

Pay period 05/22/2011 to 06/30/2012:
57 weeks of work x 40 hours per week x $7.25 =      $16,530.00

       Total minimum wages:                    $37,122.00

       Hourly rate paid, i.e.,
       $6.50 per hour x 40 hours
       per week for 129 weeks:                 ($33,540.00)

       Net minimum wages owed:                 **$3,582.00**[10]

    67.   Dominguez also alleges violations of the FLSA and
the NYLL based on defendants' failure to pay her overtime premium
pay for all hours worked in excess of 40 hours per week.
Dominguez alleges that defendants promised her $10.00 per hour
from 2006 until 2010, $12.00 per hour from 2010 until June 2012
and $14.00 per hour from July 2012 until April 20, 2014

---

    [10] Plaintiffs' counsel incorrectly calculates that Dominguez
is entitled to minimum wage damages in 2009 (Damages Chart at
22).   Dominguez worked 72 hours per week in 2009 and was paid
$523 per week according to her affidavit -- $550 per week minus
$27 in meal deductions (Dominguez Aff. ¶¶ 5, 7, 9).   This gives
her an effective hourly rate of $7.26 -- more than the NYLL
minimum wage.   See N.Y. Lab. Law § 652(1) (minimum wage in New
York was $7.15 in 2009).

(Dominguez Aff. ¶ 5).  However, defendants only compensated
Dominguez at these rates for 55 hours of work per week, even
though she consistently worked between 72 and 96 hours per week;
defendants also improperly deducted $3.00 per shift for meals
(Dominguez Aff. ¶ 5).  Dominguez worked nine shifts per week
until 2009, twelve shifts per week from 2010 until October 2013,
ten shifts per week from November 2013 until March 2014 and nine
shifts per week in April 2014 (Dominguez Aff. ¶ 9).

      68.  Both the FLSA and the NYLL require employers to
pay overtime wages, equal to one and one-half the employee's
regular salary, for every hour worked in excess of 40 hours in
any given week.  29 U.S.C. § 207(a); 12 N.Y.C.R.R. § 142-2.2.  An
employee's overtime damages should be calculated based on the
employee's "contractual wage rate, rather than what defendants
actually paid [employee]."  Dong v. Ng, 08 Civ. 917 (JGK)(MHD),
2011 WL 2150544 at *6 (S.D.N.Y. Mar. 8, 2011) (Dolinger, M.J.)
(Report & Recommendation), adopted at, 2011 WL 2150545 (S.D.N.Y.
May 31, 2011) (Koeltl, D.J.); accord Brock v. Williamowsky, 833
F.2d 11, 14-16 (2d Cir. 1987); see also Blue v. Finest Guard
Servs., Inc., 09 CV 133 (ARR), 2010 WL 2927398 at *10-*11
(E.D.N.Y. June 24, 2010) (Report & Recommendation), adopted at,
2010 WL 2927403 (E.D.N.Y. July 19, 2010) (awarding overtime on
contractual rate under the NYLL).  Dominguez alleges she worked

32 overtime hours per week from May 21, 2008 through 2009
(Dominguez Aff. ¶ 7).  Multiplying Dominguez's contractual pay of
$10.00 by 1.5, yields an overtime rate of $15.00 per hour.  Thus,
multiplying $15.00 by 32 overtime hours, and subtracting the
effective hourly rate of $7.26 Dominguez was actually paid,
Dominguez is entitled to $20,805.12 in overtime premium pay from
May 21, 2008 until December 31, 2009, calculated as follows:

Pay period 05/21/2008 to 12/31/2009:
84 weeks of work x 32 O/T hours x $15.00 =          $40,320.00

       Hourly rate paid, i.e.,
       $7.26 per hour x 32 O/T
       hours per week for 84
       weeks:                                ($19,514.88)

       Net overtime wages owed:               **$20,805.12**

     69.   Dominguez alleges she worked 56 overtime hours per
week from 2010 to June 2012 (Dominguez Aff. ¶ 7).  Multiplying
Dominguez's contractual pay rate for this period of $12.00 by
1.5, yields an overtime rate of $18.00 per hour.  Thus, multiply-
ing $18.00 by 56 overtime hours, and subtracting the effective
hourly rate of $6.50 Dominguez was actually paid, Dominguez is
entitled to $83,076.00 in overtime premium pay for the period
from January 1, 2010 through June 2012, calculated as follows:

Pay period 01/01/2010 to 06/30/2012:
129 weeks of work x 56 O/T hours x $18.00 =          $130,032.00

        Hourly rate paid, i.e.,
        $6.50 per hour x 56 O/T
        hours per week for 129
        weeks:                                         (<u>$46,956.00</u>)

        Net overtime wages owed:                       **$83,076.00**

    70.   Dominguez alleges she worked an average of 56 overtime hours per week from July 2012 until December 2012, 38.25 overtime hours per week from January 2013 to October 2013, 40.5 overtime hours per week from November 2013 to March 2014 and 33 overtime hours per week in April 2014 (Dominguez Aff. ¶ 7). Multiplying Dominguez's contractual pay of $14.00 during this time by 1.5, yields an overtime rate of $21.00 per hour.  Thus, multiplying $21.00 by the applicable number of overtime hours, and subtracting the applicable hourly rate Dominguez was actually paid, Dominguez is entitled to $48,488.10 in overtime premium pay for the period from January 2013 through April 2014, calculated as follows:

Pay period 07/01/2012 to 12/31/2012:
25 weeks of work x 56.00 O/T hours x $21.00   =     $29,400.00

        Hourly rate paid, i.e.,
        $7.64 per hour x 56.00 O/T
        hours per week for 25 weeks:                  (<u>$10,696.00</u>)
        Overtime wages owed:                          $18,704.00

Pay period 01/01/2013 to 10/31/2013:
42 weeks of work x 38.25 O/T hours x $21.00   =        $33,736.50

      Hourly rate paid, i.e.,
      $9.38 per hour x 38.25 O/T
      hours per week for 42 weeks:                ($15,068.97)
      Overtime wages owed:                        $18,667.53

Pay period 11/01/2013 to 03/31/2014:
21 weeks of work x 40.50 O/T hours x $21.00   =        $17,860.50

      Hourly rate paid, i.e.,
      $9.19 per hour x 40.50 O/T
      hours per week for 21 weeks:                 ($7,816.10)
      Overtime wages owed:                        $10,044.40

Pay period 04/01/2014 to 04/20/2014:
3 weeks of work x 33.00 O/T hours x $21.00   =          $2,079.00

      Weekly rate paid, i.e.,
      $10.17 per hour x 33 O/T
      hours per week for 3 weeks:                  ($1,006.83)
      Overtime wages owed:                         $1,072.17

      Net overtime wages owed:                **$48,488.10**

71.   Thus, based on the above calculations, Dominguez is entitled to a total of **$152,369.22** in overtime premium pay.

72.   Dominguez next alleges that she is entitled to "spread-of-hours" damages.   Under NYLL's "spread-of-hours" rule, a plaintiff is only entitled to spread-of-hours damages if she was being paid less than minimum wage at the time the violation occurred.   Fermin v. Las Delicias Peruanas Restaurant, Inc., supra, 93 F. Supp. 3d at 45 (E.D.N.Y. 2015) ("A limitation upon plaintiff's eligibility to recover for spread-of-hours is that the plaintiff not earn more than minimum wage."); see also

Guadalupe v. Tri-State Emp't Mgmt. & Consulting, Inc., 10 Civ.
3840 (NG)(CLP), 2013 WL 4547242 at *12-*13 (E.D.N.Y. Aug. 28,
2013)  Thus, Dominguez can recover spread-of-hours damages only
for the period 2010 until June 2012.  Dominguez claims to have
worked over ten hours every day during this time period
(Dominguez Aff. ¶ 7).  From January 1, 2010 until June 30, 2012,
there were 774 days on which Dominguez worked ten or more hours
per day (129 weeks x 6 days per week, see Dominguez Aff. ¶ 7).
Multiplying 774 by the statutory minimum wage of $7.15 under the
NYLL, Dominguez is entitled to **$5,534.10** in spread-of-hours
damages.

73.  In addition to compensatory damages, Dominguez
also seeks to recover liquidated damages.  As explained above,
Dominguez is able to recover only 25% of her total unpaid wages
for the period from May 21, 2008 until April 8, 2011 as liqui-
dated damages under the NYLL.  See N.Y. Lab. Law § 198(1-a)
(amended Apr. 9, 2011).  After April 9, 2011, Dominguez can
recover 100% of her total unpaid wages, plus spread-of-hours
damages.  N.Y. Lab. Law § 198(1-a).  Based on the actual damage
calculations above, Dominguez is entitled to $1,716.00 in unpaid
minimum wages and $67,817.12 in unpaid overtime pay for the
period from May 21, 2008 until April 8, 2011.  Thus, Dominguez is
entitled to **$17,383.28** in liquidated damages for this time period

36

(25% of $69,533.12).  Dominguez is also entitled to $1,866.00 in
unpaid minimum wages, $63,746.98 in unpaid overtime pay and
$2,702.70 in spread-of-hours damages for the period from April 9,
2011 until April 20, 2014.  Thus, Dominguez is entitled to
**$68,315.68** in liquidated damages for this time period (100% of
$68,315.68).

74.  Finally, Dominguez alleges that defendants did not
provide her with any wage notices or statements during her
employment (Dominguez Aff. ¶ 14).  As discussed above, an em-
ployee hired prior to April 9, 2011 is entitled to wage notices
starting in February 2012 and to wage statements each payday
after April 9, 2011 under the NYLL.  N.Y. Lab. Law §§ 195(a)
(amended Dec. 28, 2014), 195(3).  Thus, Dominguez is entitled to
a total of $5,000 in statutory damages for defendants' wage
statement and wage notice violations.  N.Y. Lab. Law §§ 198(1-b),
198(1-d) (amended Jan. 19, 2016).

75.  Therefore, I respectfully recommend that Dominguez
be awarded total damages of $252,184.28, calculated as follows:

| | |
|---|---|
| Unpaid minimum wages: | $3,582.00 |
| Unpaid overtime premium pay: | $152,369.22 |
| Spread-of-hours damages: | $5,534.10 |
| Liquidated damages: | $85,698.96 |
| Wage statement and notice violation: | $5,000.00 |
| Total damages: | **$252,184.28** |

C.   Joel Martinez

76.   Joel Martinez seeks damages for unpaid overtime premium pay.  Joel Martinez alleges that he consistently worked 48 hours per week from June 2012 until September 2013 and he was paid $420 per week -- or $8.75 per hour (J. Martinez Aff. ¶ 7). Multiplying this contractual hourly rate by 1.5 yields an over-time rate of $13.13 for each hour worked per week in excess of 40 hours.  Thus, multiplying $13.13 by eight overtime hours per week and subtracting $8.75 per hour Joel Martinez was actually paid, yields a total of $2,417.76 in unpaid overtime damages, calcu-lated as follows:

Pay period 06/01/2012 to 09/30/2013:
69 weeks of work x 8 O/T hours x $13.13 =                    $7,247.76

       Hourly rate paid, i.e.,
       $8.75 per hour x 8 O/T
       hours per week for 69 weeks:                ($4,830.00)

       Net overtime wages owed:                    **$2,417.76**

77.   Joel Martinez is also entitled to receive 100% of his $2,417.76 unpaid overtime wages as liquidated damages.   29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).  Thus, Joel Martinez is entitled to an additional **$2,417.76** in liquidated damages.

78.   Joel Martinez further alleges he is entitled to $252.71 in spread-of-hours damages (Damages Chart at 24). However, because Joel Martinez was earning more than the minimum

38

wage for the entirety of his employment, he is not entitled to spread-of-hours damages. See N.Y. Lab. Law § 652(1) (New York statutory minimum wage was $7.15 in 2012 and 2013); see also Fermin v. Las Delicias Peruanas Restaurant, Inc., supra, 93 F. Supp. 3d at 45.

79.   Finally, Joel Martinez alleges that defendants did not provide him with any wage notices or statements during his employment (J. Martinez Aff. ¶¶ 12-13).  As discussed above, an employee hired after April 9, 2011 is entitled to wage notices within ten days of the start of his employment and to wage statements each payday under the NYLL.  N.Y. Lab. Law §§ 195(a) (amended Dec. 28, 2014), 195(3).  Thus, Joel Martinez is entitled to a total of $5,000 in statutory damages for defendants' wage statement and wage notice violations.  N.Y. Lab. Law §§ 198(1-b), 198(1-d) (amended Jan. 19, 2016).

80.   Therefore, I respectfully recommend that Joel Martinez be awarded total damages of $9,835.52, calculated as follows:

| | |
|---|---|
| Unpaid overtime premium pay: | $2,417.76 |
| Liquidated damages: | $2,417.76 |
| Wage statement and notice violation: | $5,000.00 |
| Total damages: | **$9,835.52** |

D.   Pablo Martinez

81.   Pablo Martinez seeks damages under a minimum wage claim.  Beginning in September 2009 and continuing through June 2011, Pablo Martinez worked an average of 84 hours per week and was paid $350 per week, for an effective hourly rate of $4.17 (P. Martinez Aff. ¶¶ 5, 7).  Because Pablo Martinez's FLSA claims are subject to a three-year statute of limitations and his NYLL claims are subject to a six-year statute of limitations, Pablo Martinez can recover damages based on the FLSA minimum wage for the three-year period preceding the commencement of this action and damages based on the NYLL minimum wage for the period from three to six years prior to the commencement of this action. Thus, damages for the period prior to May 21, 2011 must be based on the NYLL minimum wage of $7.15.  N.Y. Lab. Law § 652(1).  For the period after May 21, 2011, Pablo Martinez's damages must be based on the FLSA minimum wage of $7.25.  29 U.S.C. § 206(a)(1). Thus, applying the applicable minimum wage, multiplying by 40 hours for each week Pablo Martinez worked and subtracting the $4.17 per hour Pablo Martinez was actually paid, Pablo Martinez is owed a total of $11,344.00 in unpaid minimum wage damages from September 1, 2009 to June 30, 2011, calculated as follows:

40

Pay period 09/01/2009 to 05/21/2011:
90 weeks of work x 40 hours per week x $7.15 =        $25,740.00

Pay period 05/22/2011 to 06/30/2011:
5 weeks of work x 40 hours per week x $7.25    =        $1,450.00

       Total minimum wages:                    $27,190.00

       Hourly rate paid, i.e.,
       $4.17 per hour x 40 hours
       per week for 95 weeks:                  ($15,846.00)

       Net minimum wages owed:                 **$11,344.00**

82.   Pablo Martinez alleges he worked 68 hours per week beginning in July 2011 and continuing through September 2013 (P. Martinez ¶ 7).   Defendants paid Pablo Martinez (1) $180 per week from July 2011 until June 2012 for an effective hourly rate of $2.65 and (2) $550 per week from July 2012 until September 2013 for an effective hourly rate of $8.09 (P. Martinez ¶ 5).   Because the minimum wage was $7.25 from 2011 until 2013, Pablo Martinez is only owed minimum wage damages from July 2011 until June 2012, calculated as follows:

Pay period 07/01/2011 to 06/30/2012:
52 weeks of work x 40 hours per week x $7.25 =        $15,080.00

       Hourly rate paid, i.e.,
       $2.65 per hour x 40 hours
       per week for 52 weeks:                  ($5,512.00)

       Net minimum wages owed:                 **$9,568.00**

83.   Thus, Pablo Martinez is owed a total of **$20,912.00** in unpaid minimum wages damages.

41

84.   Pablo Martinez also alleges violations of the FLSA and the NYLL based on defendants' failure to pay him overtime premium pay for all hours worked in excess of 40 hours per week. Pablo Martinez worked an average of 84 hours per week from September 2009 until June 2011.   Pablo Martinez was entitled to a premium pay rate of $10.725 per hour until May 21, 2011 and a premium pay rate of $10.875 per hour until June 30, 2011.   Thus multiplying the applicable premium pay rate by 44 hours of overtime work per week and subtracting Pablo Martinez's effective hourly rate of $4.17, yields a total of $27,421.90 in unpaid overtime pay from September 1, 2009 to June 30, 2011, calculated as follows:

Pay period 09/01/2009 to 05/21/2011:
90 weeks of work x 44 O/T hours x $10.725 =          $42,471.00

Pay period 05/22/2011 to 06/30/2011:
5 weeks of work x 44 O/T hours x $10.825   =          $2,381.50

      Total overtime wages:                         $44,852.50

      Hourly rate paid, i.e.,
      $4.17 per hour x 44 O/T
      hours per week for 95
      weeks:                                       ($17,430.60)

      Net overtime wages owed:                      **$27,421.90**

85.   Pablo Martinez worked an average of 68 hours per week from July 2011 until September 2013.   Pablo Martinez was entitled to a premium pay of $10.875 from July 2011 until June

2012 and premium pay of $12.14 from July 2012 until September 2013 (1.5 x his contractual pay rate of $8.09).  Thus, multiplying the applicable overtime premium rate of pay by 28 overtime hours per week and subtracting Pablo Martinez's actual pay, yields a total of $19,233.20 in unpaid overtime damages for July 2011 until September 2013, calculated as follows:

Pay period 07/01/2011 to 06/30/2012:
52 weeks of work x 28 O/T hours x $10.875 =          $15,834.00

          Hourly rate paid, i.e.,
          $2.65 per hour x 28 O/T
          hours per week for 52
          weeks:                                      ($3,858.40)
          Total overtime owed:                        $11,975.60

Pay period 07/01/2012 to 09/30/2013:
64 weeks of work x 28 O/T hours x $12.14 =            $21,754.88

          Hourly rate paid, i.e.,
          $8.09 per hour x 28 O/T
          hours per week for 64
          weeks:                                      ($14,497.28)
          Total overtime owed:                         $7,257.60

          Net overtime wages owed:                    **$19,233.20**

86.   Thus, based on the above calculations, Pablo Martinez is entitled to a total of **$46,655.10** in overtime premium pay.

87.   Pablo Martinez next alleges that he is entitled to "spread-of-hours" damages.  According to his affidavit, Pablo Martinez worked over ten hours every day during the entirety of his employment (P. Martinez Aff. ¶ 7).  From September 1, 2009

until September 30, 2013, there were 1,266 days during which
Pablo Martinez worked over ten hours (211 weeks x 6 days per
week, see P. Martinez Aff. ¶ 7).  Multiplying 1,266 by the
statutory minimum wage of $7.15 under the NYLL, Pablo Martinez is
entitled to **$9,051.90** in spread-of-hours damages.

        88.  In addition to compensatory damages, Pablo Marti-
nez also seeks to recover liquidated damages.  As explained
above, Pablo Martinez is able to recover only 25% of his total
unpaid wages from September 1, 2009 until April 8, 2011 as
liquidated damages under the NYLL.  See N.Y. Lab. Law § 198(1-a)
(amended Apr. 9, 2011).  After April 9, 2011, Pablo Martinez can
recover 100% of his total unpaid wages, plus spread-of-hours
damages.  N.Y. Lab. Law § 198(1-a).  Based on the calculations
above, Pablo Martinez is entitled to $10,012.80 in unpaid minimum
wages and $24,227.28 in unpaid overtime pay from September 1,
2009 until April 8, 2011.  Thus, Pablo Martinez is entitled to
**$8,560.02** in liquidated damages for this time period (25% of
$34,240.08).  Pablo Martinez is also entitled to $10,899.20 in
unpaid minimum wages, $22,427.82 in unpaid overtime pay and
$5,448.30 in spread-of-hours damages from April 9, 2011 until
September 30, 2013.  Thus, Pablo Martinez is entitled to
**$38,775.32** in liquidated damages for this time period (100% of
$38,775.32).

89.   Finally, Pablo Martinez alleges that defendants did not provide him with any wage notices or statements during his employment (P. Martinez Aff. ¶¶ 12-13).  As discussed above, an employee hired prior to April 9, 2011 is entitled to wage notices starting in February 2012 and to wage statements each payday after April 9, 2011 under the NYLL.  N.Y. Lab. Law §§ 195(a) (amended Dec. 28, 2014), 195(3).  Thus, Pablo Martinez is entitled to a total of $5,000 in statutory damages for defendants' wage statement and wage notice violations.  N.Y. Lab. Law §§ 198(1-b), 198(1-d) (amended Jan. 19, 2016).

90.   Therefore, I respectfully recommend that Pablo Martinez be awarded total damages of $128,954.34, calculated as follows:

| | |
|---|---|
| Unpaid minimum wages: | $20,912.00 |
| Unpaid overtime premium pay: | $46,655.10 |
| Spread-of-hours damages: | $9,051.90 |
| Liquidated damages: | $47,335.34 |
| Wage statement and notice violation: | $5,000.00 |
| Total damages: | **$128,954.34** |

E.   Jose Ricardo
     Martinez-Cayetano

91.   Martinez-Cayetano seeks damages under a minimum wage claim.  Beginning in November 2009 and continuing through August 2013, Martinez-Cayetano worked an average of 79 hours per

45

week and was paid $210 per week, for an effective hourly rate of
$2.66 (Cayetano Aff. ¶ 7).  Because Martinez-Cayetano's FLSA
claims are subject to a three-year statute of limitations and his
NYLL claims are subject to a six-year statute of limitations,
Martinez-Cayetano can recover damages based on the FLSA minimum
wage for the three-year period preceding the commencement of this
action and damages based on the NYLL minimum wage for the period
from three to six years prior to the commencement of this action.
Thus, damages for the period prior to May 21, 2011 must be based
on a minimum wage of $7.15.  N.Y. Lab. Law § 652(1).  For the
period after May 21, 2011, Martinez-Cayetano's damages must be
based on the FLSA minimum wage of $7.25.  29 U.S.C. § 206(a)(1).
Thus, applying the applicable minimum wage, multiplying by 40
hours for each week Martinez-Cayetano worked and subtracting the
$2.66 per hour Martinez-Cayetano was actually paid, Martinez-
Cayetano is owed a total of $36,032.80 in unpaid minimum wage
damages from November 1, 2009 until August 31, 2013, calculated
as follows:

46

<u>Pay period 11/01/2009 to 05/21/2011</u>:
80 weeks of work x 40 hours per week x $7.15   =   $22,880.00

<u>Pay period 05/22/2011 to 08/31/2013</u>:
118 weeks of work x 40 hours per week x $7.25 =   <u>$34,220.00</u>

      Total minimum wages:   $57,100.00

      Hourly rate paid, <u>i.e.</u>,
      $2.66 per hour x 40 hours
      per week for 198 weeks:   (<u>$21,067.20</u>)

      Net minimum wages owed:   **$36,032.80**

92.   Martinez-Cayetano alleges he worked 45 hours per week beginning in September 2013 until May 4, 2014 and was paid $25.00 per shift over five shifts per week for an effective hourly rate of $2.77 (Cayetano Aff. ¶ 7).   The statutory minimum wage under the FLSA was $7.25 per hour in 2013, but increased to $8.00 per hour in 2014 under the NYLL.   <u>See</u> 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1).   Thus, multiplying the applicable minimum wage by 40 hours, and subtracting Martinez-Cayetano's effective hourly rate of $2.77, Martinez-Cayetano is entitled to $6,632.80 in minimum wage damages from September 1, 2013 until May 4, 2014, calculated as follows:

47

<u>Pay period 09/01/2013 to 12/30/2013</u>:
16 weeks of work x 40 hours per week x $7.25 =      $4,640.00

<u>Pay period 12/31/2013 to 05/04/2014</u>:
18 weeks of work x 40 hours per week x $8.00 =      <u>$5,760.00</u>

  Total minimum wages:    $10,400.00

  Hourly rate paid, <u>i.e.</u>,
  $2.77 per hour x 40 hours
  per week for 34 weeks:    (<u>$3,767.20</u>)

  Net minimum wages owed:   **$6,632.80**

93.   Thus, based on the above calculations, Martinez-Cayetano is owed a total of **$42,665.60** in unpaid minimum wages damages.

94.   Martinez-Cayetano also alleges violations of the FLSA and the NYLL based on defendants' failure to pay him overtime premium pay for all hours worked in excess of 40 hours per week.  Martinez-Cayetano worked an average of 39 overtime hours per week from November 2009 until August 2013.  Martinez-Cayetano was entitled to a premium pay rate of $10.725 per hour until May 21, 2011 and a premium pay rate of $10.875 per hour thereafter. Thus, multiplying the applicable premium pay rate by 39 overtime hours per week and subtracting the $2.66 per hour Martinez-Cayetano was actually paid, yields a total of $62,738.13 in unpaid overtime damages for November 1, 2009 until August 31, 2013, calculated as follows:

48

Pay period 11/01/2009 to 05/21/2011:
80 weeks of work x 39 O/T hours x $10.725   =            $33,462.00

Pay period 05/22/2011 to 08/31/2013:
118 weeks of work x 39 O/T hours x $10.825 =            $49,816.65

       Total overtime wages:                          $83,278.65

       Hourly rate paid, i.e.,
       $2.66 per hour x 39 O/T
       hours per week for 198
       weeks:                                        ($20,540.52)

       Net overtime wages owed:                       **$62,738.13**

95.   Martinez-Cayetano worked five overtime hours per
week from September 2013 until May 4, 2014.   Martinez-Cayetano
was entitled to a premium pay of $10.875 until December 30, 2013
and a premium pay of $12.00 thereafter.   Thus, multiplying the
applicable premium pay rate by five overtime hours per week and
subtracting the $2.77 per hour Martinez-Cayetano was actually
paid, yields a total of $1,479.10 in unpaid overtime damages for
the time period of September 2013 until May 4, 2014, calculated
as follows:

<u>Pay period 09/01/2013 to 12/30/2013</u>:
16 weeks of work x 5 O/T hours x $10.875 =            $870.00

<u>Pay period 12/31/2013 to 05/05/2014</u>:
18 weeks of work x 5 O/T hours x $12.00   =          <u>$1,080.00</u>

      Total overtime wages:                      $1,950.00

      Hourly rate paid, <u>i.e.</u>,
      $2.77 per hour x 5 O/T
      hours per week for 34
      weeks:                                    (<u>$470.90</u>)

      Net overtime wages owed:                **$1,479.10**

96.   Thus, based on the above calculations, Martinez-Cayetano is entitled to a total of **$64,217.23** in overtime premium pay.

97.   Martinez-Cayetano next alleges that he is entitled to "spread-of-hours" damages.   According to his affidavit, Martinez-Cayetano worked over ten hours, five days per week from November 2009 until August 2013 (Cayetano Aff. ¶ 7).   Thus, there were 990 days during which Martinez-Cayetano worked over ten hours (198 weeks x 5 days per week, <u>see</u> Cayetano Aff. ¶ 7). Multiplying 990 by the statutory minimum wage of $7.15 under the NYLL, Martinez-Cayetano is entitled to **$7,078.50** in spread-of-hours damages.

98.   In addition to compensatory damages, Martinez-Cayetano also seeks to recover liquidated damages.   As explained above, Martinez-Cayetano is able to recover only 25% of his total

unpaid wages for the period prior to April 9, 2011 as liquidated damages under the NYLL.  See N.Y. Lab. Law § 198(1-a) (amended Apr. 9, 2011).  After April 9, 2011, Martinez-Cayetano can recover 100% of his total unpaid wages, plus spread-of-hours damages.  N.Y. Lab. Law § 198(1-a).  Based on the calculations above, Martinez-Cayetano is entitled to $13,290.40 in unpaid minimum wages and $23,275.59 in unpaid overtime pay from November 1, 2009 until April 8, 2011.  Thus, Martinez-Cayetano is entitled to **$9,141.50** in liquidated damages for this time period (25% of $36,565.99).  Martinez-Cayetano is also entitled to $29,375.20 in unpaid minimum wages, $40,941.64 in unpaid overtime pay and $4,433.00 in spread-of-hours damages from April 9, 2011 until May 4, 2014.  Thus, Martinez-Cayetano is entitled to **$74,749.84** in liquidated damages for this time period (100% of $74,749.84).

99.  Finally, Martinez-Cayetano alleges that defendants did not provide him with any wage notices or statements during his employment (Cayetano Aff. ¶¶ 11-12).  As discussed above, an employee hired prior to April 9, 2011 is entitled to wage notices starting in February 2012 and to wage statements each payday after April 9, 2011 under the NYLL.  N.Y. Lab. Law §§ 195(a) (amended Dec. 28, 2014), 195(3).  Thus, Martinez-Cayetano is entitled to a total of $5,000 in statutory damages for defen-dants' wage statement and wage notice violations.  N.Y. Lab. Law

§§ 198(1-b), 198(1-d) (amended Jan. 19, 2016).

100.    Therefore, I respectfully recommend Martinez-
Cayetano be awarded total damages of $202,852.67, calculated as
follows:

| | |
|---|---:|
| Unpaid minimum wages: | $42,665.60 |
| Unpaid overtime premium pay: | $64,217.23 |
| Spread-of-hours damages: | $7,078.50 |
| Liquidated damages: | $83,891.34 |
| Wage statement and notice violation: | $5,000.00 |
| Total damages: | **$202,852.67** |

### F.  Elizabeth Tigre

101.    Tigre seeks damages under a minimum wage claim.
Beginning in January 2014 and continuing until April 11, 2014,
Tigre worked an average of 37 hours per week over five shifts
(Tigre Aff. ¶¶ 7, 12).  Tigre was paid $25.00 per shift and $3.00
per shift was deducted from her pay for meals whether or not she
ate, giving her an effective hourly rate of $2.97 (Tigre Aff. ¶¶
7, 12).[11]  Defendants did not provide Tigre with any wages during
her last week of employment (Tigre Aff. ¶ 5).  Under the NYLL,
the statutory minimum wage was $8.00 per hour in 2014.  N.Y. Lab.
Law § 652(1).  Thus, applying $8.00, multiplying by 37 hours for

---

[11] As with plaintiff Dominguez, these meal credits were
improper under the FLSA and NYLL for reasons explained at page
29-30, above.

each week Tigre worked and subtracting the $2.97 per hour Tigre
was actually paid, Tigre is owed a total of $2,715.43 in unpaid
minimum wage damages, calculated as follows:

Pay period 01/01/2014 to 04/11/2014:
14 weeks of work x 37 hours per week x $8.00 =      $4,144.00

        Hourly rate paid, i.e.,
        $2.97 per hour x 37 hours
        per week for 13 weeks:                    ($1,428.57)

        Net minimum wages owed:                    **$2,715.43**

102.   Tigre also alleges violations of the FLSA and the
NYLL based on defendants' failure to pay her overtime premium pay
for all hours worked in excess of 40 hours per week.  Beginning
in February 2013 and continuing through December 2013, Tigre
worked between ten and one-half- and eleven and one-half-hour
days, four days per week as a hostess and between ten- and
twelve-hour days, two days per week as a waitress (Tigre Aff. ¶
7).  Thus, Tigre worked an average of 66 hours per week -- 44
hours as a hostess and 22 hours as a waitress (Tigre Aff. ¶ 7).
Defendants paid Tigre $10.00 per hour when she worked as a
hostess and $25.00 per shift when she worked as a waitress (Tigre
Aff. ¶ 7).  Although Tigre's affidavit does not specify what
constitutes a waitress "shift," she claims she worked 12 shifts
per week during this time period (Tigre Aff. ¶ 7).  Therefore, it
follows that Tigre worked eight shifts per week as a hostess and

four shifts per week as a waitress. Taking into account the $36 defendants improperly deducted from Tigre's weekly salary for meals, Tigre was paid $504 per week for an effective hourly rate of $7.64. Multiplying this hourly rate by 1.5, yields an over-time premium rate of pay of $11.46. Thus, multiplying $11.46 by 26 overtime hours, and subtracting the effective hourly rate of $7.64 Tigre was actually paid, Tigre is entitled to $4,767.36 in overtime premium pay, calculated as follows:

Pay period 02/01/2013 to 12/31/2013:
48 weeks of work x 26 O/T hours x $11.46 =                    $14,302.08

              Hourly rate paid, i.e.,
              $7.64 per hour x 26 O/T
              hours per week for 48
              weeks:                                         ($9,534.72)

              Net overtime wages owed:                       **$4,767.36**

        103.   Tigre next alleges she is entitled to $1,833.21 in spread-of-hours damages for hours worked in 2013 (Damages Chart at 26). However, because Tigre was earning more than the minimum wage during this time, she is not entitled to spread-of-hours damages. See N.Y. Lab. Law § 652(1) (New York statutory minimum wage was $7.15 in 2013 and Tigre was making $7.64 per hour); see also Fermin v. Las Delicias Peruanas Restaurant, Inc., supra, 93 F. Supp. 3d at 45.

        104.   In addition to compensatory damages, Tigre seeks to recover liquidated damages. Tigre is entitled to 100% of her

unpaid wages as liquidated damages.   29 U.S.C. § 216(b); N.Y.

Lab. Law § 198(1-a).  Based on the calculations above, Tigre is

entitled to **$7,482.79** in liquidated damages.

        105.  Tigre also asserts a claim for uniform mainte-

nance pay because defendants required her to wear an apron to

work and required her to maintain and launder it at her own

expense (Tigre Aff. ¶ 11).   Under New York law, employers are

required to pay "uniform maintenance pay" for the maintenance of

their employees' required uniforms.   12 N.Y.C.R.R. § 146-1.7(a).

However, an employer will not be required to pay uniform mainte-

nance pay where required uniforms (1) are made of "wash and wear"

materials; (2) may be routinely washed and dried with other

personal garments; (3) do not require ironing, dry cleaning,

daily washing, commercial laundering, or other special treatment

and (4) are furnished to the employee in sufficient number, or

the employee is reimbursed by the employer for the purchase of a

sufficient number of uniforms, consistent with the average number

of days per week worked by the employee.   12 N.Y.C.R.R. § 146-

1.7(b).  The only evidence presented to support Tigre's uniform

maintenance claim is one paragraph in her affidavit stating that

she was required to launder her apron at her own expense (Tigre

Aff. ¶ 11) and one paragraph in the amended complaint that her

uniform consisted of an apron (Am. Compl. ¶ 51).   Even under a

default judgment standard, this is insufficient to support an award of damages for this claim.  It is impossible to determine from Tigre's submission whether her uniform was of the "wash and wear" variety or whether the other factors listed within 12 N.Y.C.R.R. § 146-1.7(b) are satisfied.  Thus, Tigre is not entitled to uniform maintenance damages.

106.  Finally, Tigre alleges that defendants did not provide her with any wage notices or statements during her employment (Tigre Aff. ¶¶ 14-15).  As discussed above, an employee hired after April 9, 2011 is entitled to wage notices within ten days of the start of his employment and to wage statements each payday under the NYLL.  N.Y. Lab. Law §§ 195(a) (amended Dec. 28, 2014), 195(3).  Thus, Tigre is entitled to a total of $5,000 in statutory damages for defendants' wage statement and wage notice violations.  N.Y. Lab. Law §§ 198(1-b), 198(1-d) (amended Jan. 19, 2016).

107.  Therefore, I respectfully recommend that Tigre be awarded total damages of $19,965.58, calculated as follows:

| | |
|---|---|
| Unpaid minimum wages: | $2,715.43 |
| Unpaid overtime premium pay: | $4,767.36 |
| Liquidated damages: | $7,482.79 |
| Wage statement and notice violation: | $5,000.00 |
| Total damages: | **$19,965.58** |

G.   Robert Vasquez

108.   Vasquez seeks damages under a minimum wage claim. From February 12, 2013 until February 28, 2013, Vasquez worked an average of 40 hours per week over five shifts (Vasquez Aff. ¶ 5). Vasquez was paid $25.00 per shift and $3.00 per shift was deducted from his pay for meals,[12] giving him an effective hourly rate of $2.75 (Vasquez Aff. ¶¶ 5, 15).   In April 2013, Vasquez worked an average of 54 hours per week and was paid $242 per week for an effective hourly rate of $4.48.   Under the FLSA, the statutory minimum wage was $7.25 per hour in 2013.   29 U.S.C. § 206(a)(1).   Thus, applying the $7.25 statutory minimum wage, multiplying by 40 hours for each week Vasquez worked and subtracting Vasquez's actual pay, Vasquez is owed a total of $803.20 in unpaid minimum wage damages for the period prior to April 2014, calculated as follows:

Pay period 02/12/2013 to 02/28/2013:
2 weeks of work x 40 hours per week x $7.25 =             $580.00

                    Hourly rate paid, i.e.,
                    $2.75 per hour x 40 hours
                    per week for 2 weeks:                 ($220.00)
                    Minimum wages owed:                    $360.00

_____

[12] As with plaintiffs Dominguez and Tigre, these meal credits were improper under the FLSA and NYLL for reasons explained at page 29-30, above.

Pay period 04/01/2013 to 04/30/2013:
4 weeks of work x 40 hours per week x $7.25 =        $1,160.00

         Hourly rate paid, i.e.,
         $4.48 per hour x 40 hours
         per week for 4 weeks:                           ($716.80)
         Minimum wages owed:                              $443.20

         Net minimum wages owed:                      **$803.20**

      109.   From April 1, 2014 until April 14, 2014, Vasquez alleges he worked 53 hours per week and was paid $380.00 for an effective hourly rate of $7.17.   Under the NYLL, the statutory minimum wage was $8.00 per hour in 2014.   N.Y. Lab. Law § 652(1).   Thus, applying the $8.00 statutory minimum wage, multiplying by 40 hours for each week Vasquez worked and subtracting the $7.17 per hour Vasquez was actually paid, Vasquez is owed a total of $66.40 in unpaid minimum wage damages, calculated as follows:

Pay period 04/01/2014 to 04/14/2014:
2 weeks of work x 40 hours per week x $8.00 =        $640.00

         Hourly rate paid, i.e.,
         $7.17 per hour x 40 hours
         per week for 2 weeks:                           ($573.60)

         Net minimum wages owed:                       **$66.40**

      110.   Thus, based on the above calculations, Vasquez is owed **$869.60** in total minimum wage damages.

      111.   Vasquez also alleges violations of the FLSA and the NYLL based on defendants' failure to pay him overtime premium pay for all hours worked in excess of 40 hours per week.   In

March 2013, Vasquez alleges he worked 53 hours per week and that his regular rate of pay was $10.00 per hour (Vasquez Aff. ¶ 6). Vasquez further alleges that defendants only paid him for 48 hours each week and unlawfully deducted $3.00 per shift (five shifts per week) in meal credits, yielding a weekly net pay of $465 and an effective hourly rate of $8.77 (Vasquez Aff. ¶¶ 6, 15).  Multiplying Vasquez's regular rate of pay of $10.00 by 1.5, yields an overtime premium pay rate of $15.00 per hour.  Thus, multiplying $15.00 by 13 overtime hours, and subtracting the effective hourly rate of $8.77 Vasquez was actually paid, Vasquez is entitled to $323.96 in overtime premium pay from March 1, 2013 until March 31, 2013, calculated as follows:

Pay period 03/01/2013 to 03/31/2013:
4 weeks of work x 13 O/T hours x $15.00 =                    $780.00

                    Hourly rate paid, i.e.,
                    $8.77 per hour x 13 O/T
                    hours per week for 4
                    weeks:                                  ($456.04)

                    Net overtime wages owed:                **$323.96**

112.  Vasquez alleges he worked an average of 54 hours per week in April 2013 and that he was paid $10.00 per hour for the hours he worked as a host and $25.00 per shift for the hours he worked as waiter (Vasquez Aff. ¶ 7).  However, Vasquez's affidavit does not specify in what capacity he worked during the 14 hours of overtime each week.  Because Vasquez has not suffi-

ciently pleaded what his regular rate of pay was during these overtime hours, I must calculate his premium pay by multiplying the $7.25 statutory minimum wage by 1.5, yielding an overtime rate of $10.875 per hour.  Thus, multiplying $10.875 by 14 overtime hours, and subtracting the effective hourly rate of $4.48 Vasquez was actually paid, Vasquez is entitled to $358.12 in overtime premium pay from April 1, 2013 to April 30, 2013, calculated as follows:

Pay period 04/01/2013 to 04/30/2013:
4 weeks of work x 14 O/T hours x $10.875 =                      $609.00

        Hourly rate paid, i.e.,
        $4.48 per hour x 14 O/T
        hours per week for 4 weeks:                      ($250.88)

        Net overtime wages owed:                      **$358.12**

113.   Beginning in May 2013 and continuing through November 15, 2013, Vasquez alleges he worked 53 hours per week and that his regular rate of pay was $10.00 per hour (Vasquez Aff. ¶ 8).  Vasquez further alleges that defendants only paid him for 48 hours each week and unlawfully deducted $3.00 per shift for six shifts per week in meal credits, giving him an effective hourly rate of $8.71 (Vasquez Aff. ¶¶ 8, 15).  Multiplying Vasquez's regular rate of pay of $10.00 by 1.5, yields an overtime premium pay rate of $15.00 per hour.  Thus, multiplying $15.00 by 13 overtime hours, and subtracting the effective hourly

60

rate of $8.71 Vasquez was actually paid, Vasquez is entitled to $2,289.56 in overtime premium pay from May 1, 2013 until November 15, 2013, calculated as follows:

Pay period 05/01/2013 to 11/15/2013:
| | |
|---|---|
| 28 weeks of work x 13 O/T hours x $15.00 = | $5,460.00 |
| Hourly rate paid, i.e., $8.71 per hour x 13 O/T hours per week for 28 weeks: | ($3,170.44) |
| Net overtime wages owed: | **$2,289.56** |

114.   From November 16, 2013 through March 31, 2014, Vasquez alleges he worked 53 hours per week and that his regular rate of pay was $12.00 per hour (Vasquez Aff. ¶ 9).  Vasquez further alleges that defendants only paid him for 48 hours each week and again unlawfully deducted $3.00 per shift for seven shifts per week in meal credits, giving him an effective hourly rate of $10.47 (Vasquez Aff. ¶¶ 9, 15).  Multiplying Vasquez's regular rate of pay of $12.00 by 1.5, yields an overtime premium pay rate of $18.00 per hour.  Thus, multiplying $18.00 by 13 overtime hours, and subtracting the effective hourly rate of $10.47 Vasquez was actually paid, Vasquez is entitled to $1,859.91 in overtime premium pay from November 16, 2013 to March 31, 2014, calculated as follows:

Pay period 11/16/2013 to 03/31/2013:
19 weeks of work x 13 O/T hours x $18.00 =                     $4,446.00

        Hourly rate paid, i.e.,
        $10.47 per hour x 13 O/T
        hours per week for 19
        weeks:                                          ($2,586.09)

        Net overtime wages owed:                       **$1,859.91**

    115.   From April 1, 2014 through April 14, 2014,
Vasquez alleges he worked 53 hours per week and that his regular
rate of pay was $12.00 per hour (Vasquez Aff. ¶ 10).  Vasquez
further alleges that defendants only paid him $380.00 per week
and again unlawfully deducted $3.00 per shift for six shifts per
week in meal credits, giving him an effective hourly rate of
$6.83 (Vasquez Aff. ¶¶ 10, 15).  Thus, multiplying Vasquez's
premium pay of $18.00 by 13 overtime hours, and subtracting the
effective hourly rate of $6.83 Vasquez was actually paid, Vasquez
is entitled to $580.84 in overtime premium pay from April 1, 2014
to April 14, 2014, calculated as follows:

Pay period 04/01/2014 to 04/14/2014:
4 weeks of work x 13 O/T hours x $18.00 =                     $936.00

        Hourly rate paid, i.e.,
        $6.83 per hour x 13 O/T
        hours per week for 4
        weeks:                                          ($355.16)

        Net overtime wages owed:                       **$580.84**

    116.   Thus, based on the above calculations, Vasquez is
entitled to **$5,412.39** in total overtime premium pay.

117.   Vasquez next alleges that he is entitled to spread-of-hours damages.  April 1, 2014 until April 14, 2014 is the only time period for which Vasquez is entitled to such damages.[13]  Vasquez alleges he worked more than ten hours per day three days per week for these two weeks (Vasquez Aff. ¶ 10). Thus, multiplying these six days by the statutory minimum wage of $8.00, Vasquez is entitled to **$48.00** in spread-of-hours damages.

118.   In addition to compensatory damages, Vasquez also seeks to recover liquidated damages.  Vasquez is entitled to receive 100% of his unpaid overtime wages and spread-of-hours damages as liquidated damages.  29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).  Thus, based on the calculations above, Vasquez is entitled to an additional **$6,329.99** in liquidated damages.

119.   Finally, Vasquez alleges that defendants did not provide him with any wage notices or statements during his employment (Vasquez Aff. ¶¶ 17-18).  As discussed above, an employee hired after April 9, 2011 is entitled to wage notices within ten days of the start of his employment and to wage

---

[13] Vasquez alleges he is entitled to spread-of-hours damages in March 2013, May 2013 through December 2013 and January 2014 through March 2014 (Damages Chart at 28).  However, because Vasquez was making more than the statutory minimum wage during those time periods, he is not entitled to spread-of-hours damages.  Fermin v. Las Delicias Peruanas Restaurant, Inc., supra, 93 F. Supp. 3d at 45.

statements each payday under the NYLL.  N.Y. Lab. Law §§ 195(a)

(amended Dec. 28, 2014), 195(3).  Thus, Vasquez is entitled to a

total of $5,000 in statutory damages for defendants' wage state-

ment and wage notice violations.  N.Y. Lab. Law §§ 198(1-b),

198(1-d) (amended Jan. 19, 2016).

120.  Therefore, I respectfully recommend Vasquez be

awarded total damages of $17,659.98, calculated as follows:

| | |
|---|---:|
| Unpaid minimum wages: | $869.60 |
| Unpaid overtime premium pay: | $5,412.39 |
| Spread-of-hours damages: | $48.00 |
| Liquidated damages: | $6,329.99 |
| Wage statement and notice violation: | <u>$5,000.00</u> |
| Total damages: | **$17,659.98** |

## IV.  Conclusion

Accordingly, for all the foregoing reasons, I respect-

fully recommend that plaintiffs are entitled to judgment against

defendants, as follows: (1) $118,449.80 to Cruz-Caballero; (2)

$252,184.28 to Dominguez; (3) $9,835.52 to Joel Martinez; (4)

$128,954.34 to Pablo Martinez; (5) $202,852.67 to Martinez-

Cayetano; (6) $19,965.58 to Tigre and (7) $17,659.98 to Vasquez.

In total, plaintiffs are entitled to a judgment of **$749,902.17** in

damages.

V.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Ronnie Abrams, United States District Judge, 40 Foley Square, Room 2203, New York, New York 10007 and to the Chambers of the undersigned, 500 Pearl Street, Room 1670, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Abrams.   FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983)

(<u>per curiam</u>).

Dated:   New York, New York
         June 11, 2018

                                Respectfully submitted,


                                _____
                                HENRY PITMAN
                                United States Magistrate Judge

Copy transmitted to:

All Counsel

66